UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

BIOSTEEL SPORTS, INC.,

   Plaintiff,

vs.

HEMBAL LABS, INC.,

   Defendant.

Case No. 2:25-cv-13855

Honorable

Magistrate

---

Michael A. Sneyd (P52073)
**KERR, RUSSELL AND WEBER, PLC**
500 Woodward Ave., Ste. 2500
Detroit, MI 48226
(313) 961-0200
msneyd@kerr-russell.com
Attorneys for Plaintiff

---

## COMPLAINT

Now Comes Plaintiff BIOSTEEL SPORTS, INC. ("Biosteel") by its attorneys Kerr Russell and Weber, PLC, and for its Complaint against HEMBAL LABS, INC. ("Hembal"), states as follows:

## NATURE OF THE ACTION

1. This Complaint is an action for Breach of Contract; for Trademark Infringement in violation of Section 32 of the Federal Trademark Act (the "Lanham Act"); for False Designation of Origin in violation of §43(a) of the Lanham Act; for

Unfair Trade Practices; for Commercial Disparagement and Trade Libel; and for Unjust Enrichment.  Biosteel seeks all appropriate relief.

2. This action arises out of a contract pursuant to which Hembal was to supply 73,500 cases (13,230,000 units) of private label protein shakes (the "Product") for re-sale by Biosteel, with the label to display Plaintiff Biosteel's trademarks.

3. Despite Biosteel's pre-payment for all of the ordered Product, Hembal breached the parties' contract and damaged Biosteel by failing to timely deliver any Product and eventually delivering only a small percentage of the ordered Product.

4. Hembal knowingly and willfully violated Biosteel's rights in its distinctive trademarks by distributing non-conforming and inferior Product displaying Biosteel's trademarks into U.S. commerce without Biosteel's knowledge or consent.

5. Hembal's unlawful acts have caused and continue to cause consumers to falsely believe that Biosteel authorized the release and distribution of nonconforming and inferior Product into U.S. commerce, thus jeopardizing the goodwill associated with the BIOSTEEL mark, and causing confusion for consumers seeking quality, conforming BIOSTEEL-branded Products.

## THE PARTIES

6.     Plaintiff Biosteel Sports, Inc. is a Canadian corporation with its principal place of business at 413455 Sylvestre Drive, Windsor, ON  N8N2L9. Biosteel distributes its BIOSTEEL-branded sports nutrition products, including protein milkshakes, throughout North America, including in Michigan.

7.     Defendant Hembal Labs, Inc. is a Delaware corporation with a listed address of 1221 College Park Drive, Dover, Delaware  19904.  Upon information and belief, Hembal Labs conducts business throughout North America, including in Michigan.

## JURISDICTION AND VENUE

8.     This Court has subject matter jurisdiction under 28 U.S.C. §§1331, 1338(a), and 1367(a) because this action arises under the Lanham Act, 15 U.S.C. §§1114 and 1125(a), and includes related state-law and common-law claims forming part of the same case or controversy.

9.     Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because Hembal transacts business in this District, and a substantial part of the events giving rise to these claims occurred here.

## FACTUAL ALLEGATIONS

10.    Biosteel designs, distributes, and sells high-quality sports nutrition products under the BIOSTEEL Mark.

11. Biosteel is the owner of a federally-registered trademark BIOSTEEL, U.S.P.T.O. Reg. No. 5337779 (the "BIOSTEEL Mark") for use in association with "liquid dietary and nutritional supplements; dietary and nutritional supplements; sports supplements, namely, herbal, vitamin and mineral supplements, sports supplements, namely, nutritional supplements in the nature of ready-to-drink beverages."

12. On January 15, 2025, Biosteel issued a purchase order to Defendant Hembal for 1,323,000 units of Product (the "Purchase Order") consisting of: (1) 36,750 cases (18 units per case) of the Chocolate Protein Shake Product; and (2) 36,750 cases (18 units per case) of Vanilla Protein Shake Product.

13. Hembal accepted the Purchase Order, but the parties subsequently agreed to reduce the volume of Product from 1,323,000 to 1,260,000 units, as reflected in Hembal's invoice (the "Invoice") to Biosteel.

14. The Purchase Order and the Invoice (both attached hereto as **Exhibit 1**) form a written agreement between the parties (the "Contract").

15. By accepting the Purchase Order and issuing the Invoice, Hembal agreed to deliver to Biosteel the 1,260,000 units of Product on or near the "Target Completion Date" of February 15, 2025.  *See* **Exhibit 1**, Contract.

16. Under the Contract, all units of the Product delivered by Hembal were required to "meet the agreed specifications and be prepared for pickup by the deadlines stated above" (i.e. by February 15, 2025).

17. On January 22, 2025, Biosteel made an initial payment to Hembal for raw materials for the Product in the amount of $783,639.87. On April 16, 2025, Hembal made payment to Hembal for manufacturing services ("tolling" of the Product) in the amount of $306,180.

18. On April 18, 2025; April 24, 2025; and April 26, 2025, Hembal supplied a total of 560,826 units of the Chocolate Product that did not meet the agreed specifications of the Agreement (the "Nonconforming Product), and was thus rejected by Biosteel.

19. The Nonconforming Product, the packaging of which prominently bore the BIOSTEEL Mark, was clumpy, unappealing, unappetizing and was far inferior to the high-quality goods Biosteel would knowingly place into commerce.

20. Without Biosteel's knowledge, consent, approval or authorization, Hembal distributed some or all of the Nonconforming Product – with each unit prominently displaying the BIOSTEEL Mark – into U.S. commerce.

21. Hembal's unauthorized release of thousands of units of Nonconforming Product bearing the BIOSTEEL Mark had the effect of confusing the consuming

public into falsely believing the inferior Nonconforming Product was a genuine and authorized product of Biosteel.

22. Hembal did not deliver any conforming goods in a timely manner under the Contract.

23. In May 2025, Hembal demanded payment of an additional $204,120 for the (untimely) release of the Vanilla Product in Hembal's inventory. Desperate for the Product it had promised to its customers, Biosteel acquiesced on May 26, 2025 by paying Hembal an additional $204,120 for tolling services, bringing the total paid to Hembal to $1,293,939.87.

24. After many months of Biosteel's demands for delivery of the Product for which Biosteel had pre-paid, in May of 2025 Hembal finally supplied a total of only 189,000 units of conforming Vanilla Product.

25. Despite Biosteel's full pre-payment in the total amount of $1,293,939.87 for all of the ordered Product, and despite Biosteel's repeated demands for performance, Hembal never supplied any additional conforming Product.

26. Hembal has refused to return or refund the amounts paid by Biosteel for conforming goods that were never delivered.

27. Hembal's failure to timely deliver conforming Product resulted in Biosteel breaching agreements with its customers, causing monetary damage to Biosteel, as well as loss of goodwill and damage to Biosteel's business reputation.

## COUNT I – Trademark Infringement (15 U.S.C. §1114)

28. Biosteel repeats and realleges Paragraphs 1 through 27 as if fully set forth herein.

29. Biosteel owns valid and enforceable rights in the BIOSTEEL Mark, which is registered with the United States Patent and Trademark Office.

30. Hembal's unauthorized distribution of Nonconforming Product bearing the BIOSTEEL Mark into U.S. commerce constitutes trademark infringement in violation of 15 U.S.C. §1114(1).

31. Hembal's unlawful conduct was willful, deliberate and in bad faith.

32. Hembal's actions have caused and are likely to continue to cause confusion, mistake and deception as to the affiliation, connection, or association of Biosteel with the inferior Nonconforming Product.

33. As a direct and proximate result, Biosteel has suffered damages as well as irreparable harm, including the loss of goodwill.

## COUNT II – False Designation of Origin (15 U.S.C. §1125(a))

34. Biosteel repeats and realleges Paragraphs 1 through 33 as if fully set forth herein.

35. Hembal's unauthorized distribution of Nonconforming Product bearing the BIOSTEEL Mark into U.S. commerce constitutes a false designation of origin and unfair competition in violation of 15 U.S.C. §1125(a).

36. Hembal's conduct is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Biosteel as to the origin, sponsorship, or approval of the Nonconforming Goods, in violation of 15 U.S.C. § 1125(a).

37. Hembal's acts deprived Biosteel of the ability to control consumer perception of its products offered under its BIOSTEEL Mark, placing the valuable goodwill and reputation of Biosteel into the hands of Hembal.

38. Hembal's conduct misleads consumers and suppresses Biosteel sales of legitimate BIOSTEEL-branded products.

39. As a direct and proximate result, Biosteel has suffered damages as well as irreparable harm, including the loss of goodwill.

## COUNT III – Commercial Disparagement / Trade Libel

40. Biosteel repeats and realleges Paragraphs 1 through 39 as if fully set forth herein.

41. By distributing substandard goods under Biosteel's name and Mark, Hembal has published false and misleading representations concerning Biosteel's products and business reputation.

42. Hembal's conduct was made with knowledge of falsity or reckless disregard for the truth and with intent to injure Biosteel's reputation.

43. As a result, Biosteel has suffered reputational harm and monetary damages.

## COUNT IV – Violation of the Consumer Protection Act

44. Biosteel repeats and realleges Paragraphs 1 through 43 as if fully set forth herein.

45. Hembal's conduct constitutes deceptive acts and practices within the meaning of applicable consumer protection laws.

46. Hembal's actions are consumer-oriented, materially misleading, and have caused injury to consumers and to Biosteel.

47. Biosteel is entitled to damages, attorneys' fees, and injunctive relief under applicable consumer protection laws.

## COUNT V – Breach of Contract

48. Biosteel repeats and realleges Paragraphs 1 through 47 as if fully set forth herein.

49. Biosteel and Hembal entered into a valid and binding Contract for the delivery of conforming Product.

50. Biosteel performed all contractual obligations, including full pre-payment for all the Product in the amount of $1,293,939.87.

51. Hembal materially breached the Contract by failing to timely deliver conforming Product and by distributing unauthorized, nonconforming goods bearing the BIOSTEEL Mark.

52. As a direct and proximate result, Biosteel has sustained damages, including the Contract price of undelivered goods, damages incurred for Biosteel's inability to meet its obligations to its customers due to Hembal's breach, consequential damages and lost profits.

**COUNT VI – Breach of the Implied Covenant of Good Faith and Fair Dealing**

53. Biosteel repeats and realleges Paragraphs 1 through 52 as if fully set forth herein.

54. Hembal breached the implied covenant of good faith and fair dealing by willfully refusing to timely provide conforming Product, refusing to supply the contractual quantities of conforming Product, retaining Biosteel's entire payment despite Hembal's refusal to supply the Product, misusing the BIOSTEEL Mark, and undermining the purpose of the Contract.

55. Hembal's conduct deprived Biosteel of the benefit of the bargain and caused substantial damages.

**COUNT VII – Unjust Enrichment (in the Alternative)**

56. Biosteel repeats and realleges Paragraphs 1 through 55 as if fully set forth herein.

57. In the alternative, Hembal has been unjustly enriched at Biosteel's expense by retaining payments for Nonconforming Product, undelivered conforming Product, and the untimely delivery of a small amount of conforming Product.

58. Equity requires restitution and disgorgement by Hembal of all the sums paid by Biosteel that Hembal has wrongfully obtained and/or retained.

## **PRAYER FOR RELIEF**

WHEREFORE, Biosteel respectfully requests that this Court:

A. Enter judgment in favor of Biosteel on all counts;

B. Issue a permanent injunction prohibiting Hembal from using Biosteel's name or Mark, or distributing goods bearing the BIOSTEEL Mark without Biosteel's express permission;

C. Order Hembal to recall and destroy all Nonconforming Products bearing Biosteel's Mark;

D. Award Biosteel actual, consequential, and compensatory damages, including contract damages and lost profits;

E. Award Hembal's profits, treble damages, and punitive damages as allowed by law;

F. Order disgorgement under unjust enrichment;

G. Award attorneys' fees, costs, and pre- and post-judgment interest; and

H. Grant such other and further relief as the Court deems just and proper.

                                    Respectfully submitted,

                                    **KERR, RUSSELL AND WEBER, PLC**

                                    /s/ *Michael A. Sneyd*

                                    By: Michael A. Sneyd (P52073)

                                    *Attorneys for Plaintiff, Biosteel Sports, Inc.*

                                    500 Woodward Avenue, Suite 2500

                                    Detroit, Michigan 48226

Dated: December 2, 2025            (313) 961-0200

                                    msneyd@kerr-russell.com

**EXHIBIT 1**

**Biosteel Sports Inc.**

13455 Sylvestre Dr
Windsor ON   N8N2L9
sales@biosteel.com
biosteel.com
GST/HST Registration No.: 763868759



## Purchase Order

| SUPPLIER | SHIP TO | SHIP VIA | | P.O. | 1069 |
|---|---|---|---|---|---|
| Michael Johnigean | Various | Customer Pick Up | | DATE | 01/15/2025 |
| Hembal Labs | | | | | |
| 1221 College Park Dr | | | | | |
| Dover, Delaware  19904 | | | | | |
| United States | | | | | |

| DESCRIPTION | QTY | RATE | AMOUNT | TAX |
|---|---|---|---|---|
| RTD-CMP-18 RTD 330mL Chocolate Milkshake Protein 18pk | 36,750 | 16.092 | 591,381.00 | Exempt |
| RTD-VMP-18 RTD 330mL Vanilla Milkshake Protein 18pk | 36,750 | 16.092 | 591,381.00 | Exempt |

| | | |
|---|---|---|
| These specifications are attached to this PO for reference. | SUBTOTAL | 1,182,762.00 |
| 105 cases per pallet, 18 units per case | SALES TAX TOTAL | 0.00 |
| Target Completion Date: February 15, 2025 | TOTAL | USD 1,182,762.00 |

FOB: 1150 Maple St, Elma, NY 14059, United States

All units must meet the agreed specifications and be prepared for pickup by the deadlines listed above.

***PO and subsequent invoice will be REDUCED by the value of the corrugate ordered for this order from Westrock. Invoice provided separately and subtracted from the PO/Invoice value owed to Hembal.***

Approved By

Date

# HEMBAL LABS INC

Phone: 417-317-9565
Email: finance@hembal.com
1221 College Park Dr
Dover, DDE 19904
EIN: 88-3640308
DUNS: 11-900-5919



| VENDOR NAME | VENDOR ADDRESS | VENDOR EIN |
|---|---|---|
| BIOSTEEL SPORTS INC. | 13455 SYLVESTRE DR, WINDSOR, ONTARIO N8N2L9 | 763868759 |
| VENDOR REPRESENTATIVE | VENDOR EMAIL | VENDOR PHONE |
| DAN CROSBY | SALES@BIOSTEEL.COM | 5195669097 |

| REPRESENTATIVE | INVOICE NUMBER | PAYMENT TERMS | FREIGHT |
|---|---|---|---|
| Joshua Dunn | AMENDED-0805-01 | 59% Prepay/41% Due March 1 | COLLECT / FOB ELMA,NY |

| QUANTITY | DESCRIPTION | UNIT PRICE | TOTAL |
|---|---|---|---|
| 453.60 | Ticaloid 988 Powder | $21.32 | $9,536.929 |
| 200.00 | LAMBDA Carrageenan Powder | $7.19 | $15,185.007 |
| 1655.64 | Cocoa Powder 10/12 Fat% | $6.29 | $9,337.887 |
| 660 | DSM N&A CHOCOLATE | $15.05 | $6,623.243 |
| 660 | DSM N&A FRENCH VANILLA | $15.01 | $7,900.863 |
| 220 | DSM ART VANILLA | $27.41 | $1,520.504 |
| 20.00 | Monk Fruit Juice Concentrate | $285.00 | $70,265.289 |
| 453.60 | NAT Masking Flavor | $40.00 | $21,723.513 |
| 57,599.4 | Milk Protein Concentrate 86% ll | $11.550627 | $665,309.185 |
| 40.00 | Stevia Reb-M Powder | $160.00 | $3,155.774 |
| 703.08 | Salt | $0.80 | $567.053 |
| 226.80 | NAT Mouthfeel | $40.00 | $10,861.756 |
| 75.00 | Lactase Enzyme Powder | $170.00 | $10,478.157 |
| 1,323,000 | Water | $0.0005 | $630.902 |
| 1,260,000 | Tolling 330mL Tetra Paks | $0.405 | $510,300 |

| | |
|---|---|
| SUBTOTAL | $1,273,939.88 |
| SALES TAX | EXEMPT WHOLESALE |
| SHIPPING & HANDLING | $20,000 |
| ACCOUNT CREDIT | $0.00 |
| DEPOSIT DUE | $783,639.88 |
| TOTAL BALANCE DUE | $510,300.00 |
| **TOTAL DUE** | **$1,293,939.88** |

*[signature]*

JOSHUA DUNN, CEO
HEMBAL LABS INC
DATE SIGNED: 01/21/2024
==DATE AMENDED: 04/15/2025==

If you have any questions concerning this Invoice, please email us finance@hembal.com.

| PAYMENT SCHEDULE | | |
|---|---|---|
| Raw Materials + Freight | $783,639.87 | Due Upon Receipt |
| Tolling | ==$510,300.00== | March 1, 2025 |

**PURCHASE AGREEMENT**

In the event that Biosteel does not utilize the excess raw materials in Hembal's inventory within six months of procurement, Hembal will refund the excess raw materials to Biosteel at the same rate at which they were bought by Hembal.

In the event that Biosteel does not pay the tolling costs associated with this invoice by the date specified in the **PAYMENT SCHEDULE** and none of the raw materials are used, Hembal will not be obligated to purchase any portion of the raw materials in Hembal's inventory and the entirety of the raw materials will be made available for pickup for Biosteel within 5 days of tolling non-payment.

**WIRING INFO**

**Bank Name:** Bank of America

**Account Holder Name:** Hembal Labs Inc

**Account Holder Address:**
2318 S Pennsylvania Ave
Joplin, MO 64804

**Account #:** 325193626830

**Wire Routing #:** 026009593

**USD International SWIFT code:**
BOFAUS3N
Bank of America, N.A.
222 Broadway, New York, NY 10038

**Foreign Currency SWIFT code:**
BOFAUS6S
Bank of America, N.A.
555 California St.
San Francisco, CA 94104